UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MICHAEL LEROY CAMPBELL, | Civil Action No.: 4:08-2245-HFF-TER |
| Plaintiff, | |
| -vs- | **REPORT AND RECOMMENDATION** |
| LARRY W. POWERS and LT. PILGRIM, | |
| Defendant. | |

**I.     INTRODUCTION**

Plaintiff, who is proceeding pro se, was at all times relevant to the incidents set forth in his Complaint, housed at the Spartanburg County Detention Facility. Plaintiff raises a claim under 42 U.S.C. § 1983, complaining of the conditions of his confinement.

Presently before the Court is Defendant's Motion for Summary Judgment (Document # 39). Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Motion for Summary Judgment could result in the dismissal of his claims. Plaintiff timely filed a Response (Document # 43) to the Motion for Summary Judgment.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this motion are potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

## II. FACTS

Plaintiff sets forth the following factual allegations in his Complaint:

> On 12/16/07 around 7:00 am, I noticed water coming out of the drains in the showers. Around 9:00 - 9:30 a.m. when I came out for rec. I noticed that the water was still coming out of the drains and running out on the day room floor. When the lunch cart came in Pod 3 I was told to return to my cell, so the pod workers (green shirts) could get the food and drinks ready. This took 30-40 minutes. By this time, raw sewage which contained human feces had started coming under my door and my toilet had started running over. The water on the outside of my door was 7 - 8 inches deep and smelled real bad. The staff made us walk through the raw sewage to get our food. We asked if we could eat on the upper level of the day room until they fixed the problem but Lt. Pilgrim told everyone to go to their cells and shut the door. When I stated that I didn't want to walk through the infested water twice because of the raw sewage Lt. Pilgrim still insisted that I walk through it and started raising his voice and shaking his can of mace saying if I don't get in my room that he would mace me and lock me down. Out of fear I walked through the water as instructed and returned to my cell and closed the door. After about 45 minutes to an hour Lt. Pilgrim let me out of my room and told me to sit in the day room while officers take pictures of the raw sewage and measure how high the water was in my cell and told me not to go near the water. About 1 hour later they told the Pod workers to start cleaning up. They had to clean the TV area and the cells. We were given Pinesol and a mop. I also had to discard my sheets and blankets which I put under my door to stop the water and waste. When I dryed (sic) the water out of my room I was told to stay there to further notice (sic). That was around 11:00 a.m. I complained to Lt. Pilgrim to let me out my room because the smell was so bad but he refused. After a while I noticed a rash on my feet. It took 7 days for me to receive medical attention. For causing bodily harm and was also administered in a grossly negligent manner while working under cover of the Spartanburg County Detention Center (sic). This violation of my constitutional rights were intentionally committed (sic).

Complaint at 3-4.

The Spartanburg County Detention Facility (SCDF) is a pretrial detainment facility. Powers Aff. at ¶ 3. Defendant Larry Powers is the Director of the SCDF. Id. at ¶ 1. Powers avers on the morning of December 16, 2007, there was a problem with the sewer grinder at the SCDF and sewage did back up into Pod 3. Id. at ¶ 5. As soon as the problem was identified, immediate steps were taken to have the problem remedied. Id. Upon inspection by the plumbing contractor who had been

called to the SCDF on an emergency basis, the sewer grinder was found to be running but not grinding due to the fact that it had been impacted up to several hundred feet with blankets, bed sheets, underwear, trash bags, glass tubes, shampoo bottles, shoes, rags and other debris that had been flushed down the toilets by the inmates. Id. at ¶ 6-7. The debris was removed as quickly as possible and the grinder was operational by early afternoon. Id. at ¶ 8. Due to the sewage back up the inmates had to be moved from the Pod to a day room. Id. at ¶ 9. Since there is only one way in and out of the Pod, all of the inmates and Officers in that Pod had to walk through the sewage which had backed up into the Pod. Id.

Defendant Lieutenant Lewis Pilgrim is an officer at the SCDF. Pilgrim Aff. at ¶ 1. Pilgrim worked with other officers to move the inmates from Pod 3 to a day room so clean-up of the sewage could begin. Id. at ¶ 4. Lewis does not remember having a confrontation with Plaintiff at that time. Id. at ¶ 5. However, Pilgrim avers that, if Plaintiff disregarded his instructions to move to the day room, he may very well have followed SCDF policy and employed the continuum of force by raising his voice and threatening further actions if Plaintiff continued to refuse his commands. Id. at ¶ 6. Because no force was used, an incident report was not written. Id.

Plaintiff avers that he got a rash following the sewage incident and it took seven days for him to receive any medical attention. Plaintiff's medical records from the time frame of the sewage incident reveal no complaints of a rash. Ex. B to Powers Aff.

### III. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray

Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV. DISCUSSION

### A. 42 U.S.C. § 1983

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

### B. Legal Analysis Applicable to Pretrial Detainees

The SCDF is a pre-trial detainment facility. Powers Aff. at ¶ 3. Plaintiff was detained at the facility to await the disposition of pending charges. Id. Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir.1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions ... the

State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

### C. Conditions of Confinement

Confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Bell, 441 U.S. at 535 n. 16. To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir.1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir.1988)). Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995). The test for whether a prison official acts with

deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process-even though the conditions imposed serve some ordinarily legitimate state objective." Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir.1985), cert. denied, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381.

Plaintiff has failed to show that either of the Defendants knew of and disregarded an excessive risk to inmate health and safety. Instead, the record reveals that Powers and Pilgrim took reasonable steps to remedy a problem created by the inmates by flushing various objects down the toilets. Powers and Pilgrim moved all of the inmates in Pod 3 to an area clear of sewage, the day room.[1] Officers and inmates alike had to walk through the sewage because there was only one way in and out of Pod 3.

Plaintiff has not presented evidence showing that Defendants engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm would result. See Farmer v.

---

[1] In the light most favorable to Plaintiff, at most there was a short delay in moving him from Pod 3 to the day room.

Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Plaintiff has not shown that he was deprived a "basic need" or that Defendants were deliberately indifferent to Plaintiff's needs when dealing with the sewage situation. Strickler, 989 F.2d at 1379. Further, Plaintiff has failed to show any express intent on the part of Powers to punish him. Finally, Plaintiff has failed to show that any injuries he may have received as a result being exposed to the sewage were any more than de minimis. To survive summary judgment, the plaintiff must show more than de minimis pain or injury. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993)). The plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381.

For these reasons, Plaintiff's claims fail as a matter of law and summary judgment is appropriate.[2]

### E. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow,

---

[2]To the extent Plaintiff is also claiming that Defendants were deliberately indifferent to his medical needs, such a claim fails as well. Plaintiff has not shown that his treatment was 'so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); see also Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir.2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir.1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, assuming arguendo that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In Maciariello v. Sumner, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F.2d at 298. Defendants in the present case have not transgressed any "bright lines" of constitutional conduct and, as such, are entitled to qualified immunity.

**F.     State Law Claims**

Plaintiff fails to submit sufficient evidence to create a genuine issue of material fact on any of his federal causes of action. Thus, it is recommended that summary judgment be granted as to those claims. If the district judge accepts this Report and Recommendation, then the original federal jurisdiction claims will be dismissed. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989). Therefore, to the extent Plaintiff has raised any state law causes of action, the undersigned recommends that the district judge decline to retain jurisdiction over those claims.

## V. CONCLUSION

For the reasons set forth above, it is recommended that Defendants' Motion for Summary Judgment (Document # 39) be granted and this case be dismissed.[3]

  s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 6, 2009
Florence, South Carolina

**The parties are directed to the important notice on the following page.**

---

[3] Also pending are Plaintiff's two Motions for Appointment of Counsel (Documents # 33, 34). Plaintiff asserts that he is unable to read or write and has to depend on other inmates to do his legal work. Plaintiff has identified no exceptional circumstances that would warrant appointment of counsel, see Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975), as he has failed to show how his reliance on others has hindered his ability to prosecute this case. Indeed, Plaintiff has filed at least four other cases in this court without counsel. See 4:07-3972-HFF-TER; 4:07-4012-HFF; 4:08-1765-HFF-TER; and 7:09-1918-HFF-TER. These Motions for Appointment of Counsel (Documents # 33, 34) are **DENIED**.